Your Honor, this is the second case of the morning, call 2-10-268, The Anistar International v. Fernandez. On behalf of the Iowans, Mr. John Thomas Moran. On behalf of the Iowans, Mr. Terence Cutler. Mr. Moran. Good morning, Your Honor. Good morning. In this appeal, I represent Louis Fernandez, who is the appellant to the cross-appellee. As a preliminary matter, I know that Navistar wants to use a document that they've blown up. And I would ask Lee, I don't have any objection per se, but I think that the document that they blew up is incomplete. And I would ask Lee to file, it's basically the same document with some additional highlighted language at the bottom. I'll give a copy to each of your honors students. Well, before you do so, can you tell me how the demonstrative board is incomplete? Yes, it leaves out the last sentence of paragraph 7 of the waiver and release in this particular, excuse me, paragraph 7 of the employment severance agreement. The last line is, in addition, if such a court or arbitrator deems that any of the foregoing restrictions are unreasonable. So, if such a court or arbitrator, and I think that the use of the word arbitrator is significant. And I think that that led the trial court in this case to, in fact, find the ESA enforceable agreement. Will you give it to the clerk, please? I have three copies. Is his representation correct that the sentence is missing? Yes, Your Honor. I just included in the law the language relevant to whether the ESA or the waiver was issued in the Senate arbitration. Both documents are in the appendix. Okay. Thank you. May it please the court. This case presents two primary questions that need to be decided. But, in fact, actually, if the court decides the first question in favor of Mr. Fernandez, it need not reach the second question. The first question is whether any issue should have been left in the circuit court based on the language of the employment severance agreement in this matter. In other words, whether or not the language that says any issues arising from or relating to Mr. Fernandez's employment with Navistar need to go to arbitration. Doesn't your case really boil down to whether or not there was an existing enforceable ESA agreement at the time your client sat down with Navistar? Isn't that really what it boils down to when he sat down February 13, 2008, whether or not there was an existing ballot ESA agreement enforced in effect at that time? Well, certainly we contend that there was. And, in fact, even in the supplemental appendix filed by Navistar, you can see that there's a December 17 ESA included and resigned by all of the parties. So we believe that there was nothing to be gained by this February 13 meeting other than to take Mr. Fernandez by surprise and have Mr. Bungie, an independent attorney for Kirkland & Ellis, proceed to describe in response to my client's questions, what exactly, what kind of documents do you need back? And the record shows that Mr. Fernandez indicated that Mr. Bungie told him that, while we're talking about confidential, proprietary documents. Setting aside the testimony at depositions or at arbitration, setting aside the testimony, isn't it true that the rules of evidence, that under the rules of evidence, contemporaneous writings really should guide as opposed to the recollections? In this case, your client sat down with Navistar, signed both a new ESA that voided all prior ESAs and a waiver and release at that time. Why should that not control over the recollections of what took place on February 13th? Because the, as we indicated in our brief, Mr. Bungie acted as Navistar's representative to explain. Now, our position is, is that why is he there unless he's able to speak to Mr. Fernandez with some degree of authority as to what Mr. Fernandez needed to do under this particular agreement? But your question backs into another point in this case, and that is that, assuming that, assuming that the waiver and release constituted a new consideration that was for this, let's call it the February ESA, Navistar has argued that those are successive agreements. But it's clear that in fact, under the, under the Illinois Supreme Court's case of Gallagher versus Leonard, that what that establishes is that there's only one agreement here. One agreement composed of the ESA and the waiver and release because we've got, under the elements of Gallagher, we've got the fact that the agreements are assigned at the same time between the same parties. They have the same purpose in the course of the same transaction. Mr. Bungie, let me stop you there. Recognizing a lot of cases, that is a longstanding principle. Instruments executed at the same time, by the same parties, will be regarded as a contract that can stew together. I think we are missing the element for the same purpose. How is the waiver and release in the ESA, how are they for the same purpose? One is to effect a confidentiality agreement to facilitate that where the defendant would not disclose confidential information. The other, as I understand it, is to allow the defendant to obtain severance benefits and collect them in ten days as opposed to six months. How are they for the same purpose? That's a central element in this document, isn't it? Well, the waiver and release refers in its own text to the ESA. The real question here is, who should be construing these agreements? I mean, that's the first question. Was Judge Popejoy correct in trying to separate these two documents, which, as we argue, are inextricably intertwined, versus keeping jurisdiction over the waiver and release and sending the ESA off to an arbitration panel? Our position is that because of the broad language under this Court's own decision in the Barr case, it's clear that those internal references, cross-references, put this entire matter before arbitration, which is appropriate because everything should be heard in one forum. Otherwise, you get the kind of problem that we have here, where we have the judge below, on one hand, finding a breach of the waiver and release, and on the other hand, saying, well, that's all I'm finding. There's no, I'm not giving you any remedy for that. You made an oral motion relating to affirmative defenses with regard to the waiver and release, but I believe the record does not contain any written documentation of those affirmative defenses. Is that correct? No, Judge. There is an amended, or let me put this the way they call it, a revised answer to the amended complaint, which includes the affirmative defenses. And there were written affirmative defenses to the original answer to the amended complaint, but Navistar indicated that not enough facts were included to properly present those affirmative defenses. So counsel for Mr. Fernandez added additional facts, and then, and then. How did he add them? Orally or in writing? As I understand it, they added them in writing, but. There was a petition for leave to file, there was a motion for leave to file an amended defense. Yes, and that was granted. And in addition, Navistar responded to the amended affirmative defenses. It was granted. Was it actually filed? Because from what we understand, it wasn't. I'm assuming it was filed because I don't understand why Navistar would have responded to them if there wasn't a written document. There had to be something that they would have responded to. If there were affirmative defenses, then what did the trial court do insofar as the affirmative defenses? The judge found that the affirmative defenses were waived. Our position is that affirmative defenses, especially in this case, where there was a response file, shouldn't be deemed to be waived. In fact, affirmative defenses can be raised any time before the final judgment. And that was, so that is the, that's the, well, what we consider to be an error here. Was this based upon a motion for summary judgment? Yes, the affirmative defense. The motion for summary judgment saying it's waived, was it based, was it coming from a motion for summary judgment? The amended motion for summary judgment triggered the filing of these affirmative defenses. And thereafter, the trial court did what relative to saying it's waived and in what document did he make that statement or declaration? I think he states that in the November 6, 2007, written opinion letter. Correct me if I'm wrong, the court granted leave to file the affirmative defenses, but they were never actually filed. I don't know whether they were filed in court or not. They were certainly served on Avistar, which responded to them. That's the question that I think Judge McClaren was asking. Not only that, but did these affirmative defenses raise a material issue of fact? If they did, did you ever mention it? Yes, that was, that was part of the response by Hernandez to the motion for summary judgment. Your position is that the affirmative defenses should not have been considered waived because Navistar responded? That Navistar responded and that if there was a question of waiver, it was eminently curable because we were still at the summary judgment stage. We were not going towards a trial at that point in time. And there's obviously the whole point of the exercise is whether or not Navistar was on notice of the affirmative defenses. It was by its own conduct and in responding. So we believe that the affirmative defenses were erroneously considered waived. If the ESA language is found to be as broad as we believe it to be, then the court needn't reach the other question in this case. And that is assuming that the waiver in the lease was properly reported to trial court and whether there are issues of material fact existing which bar the entry of summary judgment. The Barr case, I think, makes it clear that the language here doesn't get any broader than the language contained in the ESA. And I think that was intentional. And Navistar drafted all the documents in this particular case and in light of the recent Illinois Supreme Court decision in Molina and then some subsequent decisions, that kind of broad language basically puts everything in front of the arbitrators, at least to make determinations of arbitrability, if nothing else. You're saying that the waiver in the lease was breached because it indicated that your client was entitled to two more days of employment and it wasn't granted there? He was escorted out immediately after signing the document? The waiver in the lease was breached in several significant aspects. One is that he was supposed to have two additional days of employment. He didn't receive those. He didn't get paid for them. His insurance was cut off the following day, the next day. More importantly, he did not receive the severance within 10 days of the 13th of February. And that was the whole point of the exercise of signing the waiver in the lease and the ESA in Navistar's offices. Well, did the trial court find that what you just said is wrong or false? Because it would seem that if that was true, then it would appear that the waiver in the lease was not on it. The judge below never really considered that question. Instead, he dealt with the question whether or not Mr. Fernandez had any documents belonging to Navistar in his possession and found that that question was case determinative and then ruled based upon that that that was a breach of the waiver in the lease. Now, the waiver in the lease, our position is that it's an ambiguous document based upon the way it's written. And Mr. Bungie, who proceeded to – and there's no contrary testimony. Mr. Bungie proceeded to tell him what – I'm sorry, Judge. Your argument that it's ambiguous has to do with the term belonging to. That's correct, Judge. And the court found that that was not ambiguous. But equally, in the waiver in the lease, it's clear your client knew that compliance with the waiver in the lease was a conditioned proceeding to enforcement of the ESA. That's right in the waiver in the lease, correct? There were conditioned proceedings in the waiver in the lease, although we contend it's a condition subsequent because Navistar had already pre-signed the documents and so forth. Well, if you were signing a waiver in the lease that said that you're supposed to deliver up all these documents that belong to them, when were you supposed to do it? Were you supposed to do it that day when you signed it? How were you supposed to know that you were going to supposedly sign a document that required you to give up these things? Well, that's our affirmative defense of economic and other duress because Mr. Fernandez asked for time to have his attorney take a look at these two documents, and that was denied. He was told, sign now or you're out of here right now anyway and you won't have any severance. He went to this meeting believing that they were going to discuss with Mr. Elgin. It wasn't the next or the fourth time. Do you have any other questions? Time's up, sir. I'm sorry. If you have an opportunity again, I would. Right. Is it the ten-minute one? Fifteen minutes. Fifteen, okay. Fifteen, fifteen, and five. There you go. Okay, thank you. Yes. Good morning, Judge Henson, Judge McClaren, and Judge Burkett. I thank you for taking the time this morning to listen to the lawyers, and hopefully we'll be able to answer your questions so that you can come to the correct decision in connection with this case. I look at the issues raised by Fernandez. At first blush, the case seems somewhat confusing, complicated, but it isn't. It's really a simple situation. There are a number of matters raised by Fernandez which have absolutely no relevancy to this appeal. He calls himself a whistleblower. He talks about other litigation. He talks about the arbitration fiasco. None of those things have anything to do with your decision. A little bit of background I'd like to address, which I think is helpful to understanding this case. This case is not about the big, bad corporation steamrolling the poor little employee and taking all of his benefits away from him. This case is about the greed of an employee who was not satisfied to get one of the most lucrative employee severance packages any of us can possibly imagine. Instead, Mr. Fernandez chose to take this as an opportunity to extort as much money as he could from Navistar. Mr. Echol, what's the standard of review here? De novo, Your Honor. And we're looking at the contract and the waiver and release. Primarily, yes. Can you discuss the position, Mr. Fernandez, that the waiver and release does relate to the ESA and they can't be separated? Your Honor, the waiver and release does relate to the employment severance agreement. If you breach the waiver and release, you lose your severance benefits. That doesn't mean they're one document. As Judge Hudson pointed out a few moments ago, these two documents were drafted for two entirely different purposes. The employee severance agreement has 18 paragraphs. Seventeen of them talk about severance benefits and how they're going to be paid and how they're going to be calculated and the tax ramifications. And there's one paragraph that talks about arbitration. The waiver and release is an entirely different document in terms of its scope and purpose. The waiver and release really was to protect Navistar. It was a waiver of claims that Fernandez could potentially have against Navistar. It talks about all kinds of waivers, waivers of federal clauses of action, Sarbanes-Oxley, and all kinds of things. What about the fact that the ESA agreement also protected Navistar because if Mr. Fernandez was stealing confidential information or retaining information that he was not entitled to, that would also have been a breach and Navistar could have gone in and gotten an injunction under Section 7 of the ESA. Why did Navistar need the waiver and release when those provisions were already in the ESA? Because the waiver and release was much more robust and larger and greater protections to Navistar. The waiver and release deals with more than just confidential proprietary documents of Navistar. It talks about all of Navistar's property. So under the waiver and release, Mr. Fernandez had obligations that did not exist under the Employment Severance Agreement. He had to return to us immediately all property belonging to Navistar, all documents, whether they were confidential, proprietary, attorney-client, word product, or anything else. What about the argument that that term belonging to is ambiguous? Judge, I would just tell you that that is absolutely an easily understood term by any normal educated person. And in fact, Mr. Fernandez on his own uses that exact terminology in affidavits that are part of the record in this case. He filed an affidavit for Judge Polkjoy saying, I am giving you all of the documents belonging to Navistar. So Mr. Fernandez in no way was misled or there was no ambiguity whatsoever as to what that phraseology was. I doubt the ambiguity of the word immediately relative to immediately turning over. And if he signed this on a Tuesday and the document said immediately, when would he, in your opinion, be required to turn over the things that the waiver and release required? Before he walked out the door that day. What if they're at home? The agreement, I believe, talks about returning any documents from home as well. So I think there's some common sense that could be. The point is, is that if he's not at home, but he's at Navistar's place of business, are you suggesting he should call his wife and tell her to bring the documentation? Because that seems to be what I would say, even though it seems to be a little bit extreme. Excuse me. I'm having a problem with the concept that you would enter this agreement and he claims that he's got two more days and he's not given two more days, but he's supposed to immediately turn over anything that belongs to you. And it seems to me like there are material issues of fact that would indicate that maybe the trial court shouldn't have granted summary judgment. Judge, I disagree, and here's why. If you look at not only the terminology, but you look at what occurred, which was all submitted to Judge Polkjoy by way of the affidavits and the matters considered for summary judgment, after Fernandez signed the waiver and release that talked about the immediate return of all documents, he was sent repeated letters by Navistar. Because Navistar began to learn that he hadn't returned everything. So they sent him letter after letter saying, Mr. Fernandez, we know you still have documents of ours. Return them. And he didn't. And they sent him another letter and he didn't. And ultimately, he sends them a letter saying essentially, I have your documents and I'm going to file a Sarbanes-Oxley complaint unless you give me $1.8 million. I'm not really having much problem with what you're saying. The problems I'm having is if you enter into an agreement and there are duties and responsibilities that are mutual insofar as he's supposed to return the documents and you're supposed to give him two more days and you don't, then it seems to me that you breached the agreement just as much as he did. And therefore, you shouldn't be getting the relief that you're claiming. Your Honor, again, I just... Maybe he shouldn't be getting the relief he's claiming too, but... Well, he breached the waiver and release before we had any duty to pay him. Okay? He had to give us those documents back and he didn't do it. He wasn't entitled to have a check when he walked out the door that day. He was going to get, within 10 days, he was going to get over $300,000 from Navistar. And during that 10-day period, it would have been more than reasonable for him to return all documents belonging to Navistar. But according to this document, he would have breached it because it says immediately. If he had documents, which he did and he has admitted so, in his possession, at the time he signed the waiver and release and didn't turn them over, he breached the document. So precisely when he signed the document, he was in immediate breach, is what you're saying? Yes. He breached it immediately because he knew he had documents that had not been returned to Navistar which belonged to Navistar. He was well aware of that. The waiver and release contain the provision that Mr. Fernandez agreed to provide immediately all hard copy electronic documentation or information belonging to Navistar. The employee represents that he does not possess any documentary or other information belonging to Navistar, at his residence or any other location outside of the Lawrenceville, Illinois headquarters. Correct. So the situation Judge McLaren is referring to, if he had something at home, how long did he have to bring it back? He was warranting to us at that particular point that he had nothing at home and everything he had belonging to us was at Navistar. So before he walked out of Navistar's office that day, everything should have been returned to us. It wasn't. He was in breach of the waiver and release. And he could have sought an amendment if he did have something at home? Sure. What about the argument that while the affirmative defenses were never formally filed, you waived that complaint by virtue of the fact that Navistar responded to the affirmative defenses? Here's the full story on the waiver of the affirmative defenses. I was present in the trial court and I do have firsthand knowledge of what occurred. Fernandez, as you pointed out, Judge McKay, he asked me to file affirmative defenses, and that motion was granted. Based upon the fact that it was granted, Navistar went ahead and responded to the affirmative defenses, essentially saying that they haven't pled any facts. And you know as well as I do, with fraud, duress, you have to prove and plead specific facts, and they didn't do it. So we responded. Even though Fernandez was given leave to file that document, he didn't do that. When Judge Polkjoy originally ruled on the motion for summary judgment, he said, you've waived it. Then Fernandez filed a motion to reconsider, telling Judge Polkjoy, whoa, wait a second, you made a mistake. Navistar knew about this, no harm, no foul, consider it. So Navistar, in their response on the motion to reconsider, because I think it was the smart thing to do because we knew there were not any facts pled, we said to Judge Polkjoy, go ahead and consider it for purposes of your motion to reconsider. So we do not have an argument on appeal. Judge Polkjoy considered it and denied their motion to reconsider and maintained his same ruling on the motion for summary judgment. So those are all of the circumstances surrounding the affirmative defenses. Okay. If I could talk with the time I have remaining about at least how I view sort of the chronology of deciding the exhibits or the issues in this case. To my way of thinking, being kind of a simple guy, is... You're not simple, counsel. Thank you. Not smart. You're very complex. Okay. Thank you very much, Judge. I don't know if that's a good thing or a bad thing. It's good. It's like when somebody tells my wife, I know your husband, and she says, is that a good thing or a bad thing? So in this situation, when I look at this rather complicated case, I said to myself, well, if the ESA never should have gone to arbitration, Fernandez's argument that the waive and release should be crammed into the ESA and all of it should have gone to arbitration, if that issue falls, there's really nothing else to talk about. So I want to look at the ESA. And Judge Polkjoy, who, fine judge, made the absolute right ruling on the waive and release, I think he made a mistake on the ESA. And here's why. Paragraph 9 of the ESA, and Mr. Moran kind of forgets to mention this to you when he's arguing, for good reason. This really blows up his argument that this broad arbitration clause in the ESA should overwhelm everything else. Paragraph 9 says, except as provided in paragraph 7, any controversy or claim arising out of the ESA or a breach thereof shall be settled by arbitration. Now, we all know that one of the things that your job would be is to try to interpret this document to give meaning and importance to all of the words, not just like cross out acceptance provided in paragraph 7 and just look at the remaining language, but to give weight and interpretation to the entire document. So what these parties agreed to was that except as provided in paragraph 7, controversies are decided by arbitration. Now, we can look at this and it makes sense to me. Everything else other than paragraph 7 deals with severance benefits. How much? How are we paid? How are the tax consequences? Et cetera, et cetera. So the intent of the parties was that if it dealt with those types of issues, it was going to arbitration. But then let's look at paragraph 7. Paragraph 7 says it's not going to be arbitrated if Fernandez appropriates, nice word for steals, directly or indirectly from personal use or the use of the vote. In the matter of taxation and obtaining or procurement of revenues, the term appropriation relates to the tax process of a levy and appropriation. Are you suggesting that so far as taxing consequences, that that's stealing? No, Judge. I'm talking about the balance of this paragraph where it talks about appropriating secret confidential proprietary information. That's the reference that I'm talking about. So in paragraph 7 it's saying that Fernandez cannot divulge or appropriate directly or indirectly for personal use or use of others any secret or confidential proprietary information related to the business of manifesto. So what that ESA tells us is if Fernandez breaches or allegedly breaches based upon a violation of paragraph 7A, it's not going to arbitration. And how else do we know that? We look at paragraph E. In the event that any of the foregoing restrictions are violated, the company, manifesto, shall be entitled, comma, now I'm going to sound like a Catholic school English teacher. Let's look at these commas because this is not disjunctive relief, as counsel argues in his brief, where the only time it can go to certain court is if it is for injunctive release. That's not what this says. In addition, the company shall be entitled, in addition to any remedies and damages available under the law, comma, that could be comma or otherwise comma, to recruit, offset, suspend, or terminate any and all separation payments and benefits previously paid under this agreement. Now we have a comma, to injunctive relief in the court of capital jurisdiction to restrain the violations of those restrictions, comma, and or prevent any threat of violation by the executive. OK. What Fernandez wants to argue is the only thing we could take to the circuit court is going for injunctive relief. That's not what this says. This is an enumeration of the various remedies available to Navistar should there be a breach. Now think of the illogical nature of part of their argument that they put in their briefs. Well, what paragraph 7 says is that the only time Navistar can go to circuit court is for injunctive relief. Everything else has got to go to arbitration. That's not what it says. And on top of that, think about this. In this case, there was a petition for an injunction. And in that injunction, we contended that Fernandez had confidential proprietary documents. And there was a hearing on that. And it was a hearing before Judge Polkjoy. And Judge Polkjoy received certain documents, determined they were confidential proprietary, and then gave bad things. OK. Now, what Mr. Moran is apparently arguing is that the circuit court can make a determination of confidential proprietary documents for purposes of an injunction, but they can't make that determination in determining whether there was a breach of the contract. And that issue has to then go to arbitration. Mr. Ekel, let me ask you this question. You seem to be saying so many words that if the executive breaches the ESA, the breach would be adjudicated in the trial court. Is that what you're saying? Yes, Your Honor. What I'm saying is if there's a breach of an allegation under paragraph 7A, it's in the trial court. How do you respond, then, to what could be an argument that doesn't have rhetoric arbitration clause, the overarching arbitration clause sort of meaningless? It doesn't, Your Honor. Why not? Because everything else goes to arbitration. OK. It says except paragraph 7, we're talking about confidentiality, all the controversies or claims relating to this agreement go to arbitration. So let's say that Fernandez and Navistar have a disagreement over timing of severance payments or maintenance of medical insurance payments going forward. That goes to arbitration. So that agreement has a very specific area that will stay in arbitration. And as a court, when you're trying to figure out the intention of the parties by reading the full document, it's the only way it makes sense. Are you saying that if the employee is seeking damages under the ESA, then it's subject to arbitration? And it's subject to arbitration regardless of any claim that Navistar makes except what is contained in paragraph 7A, which if paragraph 7A is effective, it still doesn't affect you or Navistar because it refers to your remedies and your damages as opposed to the employee's remedies and damages. So that for purposes of the ESA, everything other than your complaint for your damages, which I don't think would be deemed to be payments to be made under the ESA, your damages would be from the appropriation or the slander or all the other things that are listed in A. If the employee breaches the ESA by committing an appropriation or confidential secrets, that goes to the circuit court. If there is another issue or some other issue about benefits under the ESA, Fernandez can go to arbitration over those. If there is a waiver release... Do you have a restrictive covenant somewhere in the ESA or any of the agreements that he ever signed with Navistar? A restricted covenant? I.e., for two years, three years, he can't do anything within five miles of any Navistar business? Yes, within the waiver and release and within the ESA. In both documents, there are restrictions. The ESA indicates he can't divulge or appropriate our secret or confidential information, not discourage the company, not compete, not recruit or solicit. Under the waiver and release, there are some similarities, but there are the added provisions that Fernandez cannot disclose attorney-client-privileged information for a Navistar work product. It must tell Navistar if he's going to provide testimony and or make statements about Navistar to an investigatory body. Turn over all documents to Navistar upon termination. Then it goes on to release a number of potential claims against Navistar, including violations of the Civil Rights Act, employee retirement, and human security, etc. What would the attorney-client-privileged have to do in this case if Mr. Fernandez is not an attorney? He may have possession of attorney-client information. In fact, in this case, he did. He had a report that was done by our outside counsel on a subject matter between Navistar and the outside counsel. He had a copy of that report. That's one of the documents he took. Okay? So, again, my position is that if you look at the ESA, if you look at the clear language, the ESA never should have gone over to arbitration in the first place. Okay? Thank you, Mr. Echols. Your time is up. You'll have, I think, five minutes.  Thanks a lot, Jim. We disagree with Mr. Echols. About what? We're surprised. About a number of things. Let's start with one of the issues that keeps floating around here. One of the questions that was raised earlier was why does Mr. Fernandez claim that the comments made to him by Mr. Bungie could be relied on? Well, if we look at the appendix supplied by Navistar at A0269, which is the waiver and release, paragraph three of the waiver and release states, the employee further agrees and acknowledges that he has been counseled by international regarding attorney work product and attorney client privilege information. That counseling was Mr. Bungie, we must assume. So Navistar's agreement, which they forced down Mr. Fernandez's throat, says that you should listen to what Mr. Bungie tells you. And, of course, Mr. Fernandez says that's also what Mr. Elliott, I believe it was, the Navistar vice president, told him as well. There are other factors. We were talking about documents, and Justice McClary, you raised the point, well, when he signed the agreement according to Navistar's position, he was in breach. That is correct, and as Mr. Eckel admitted, that is their position. It's interesting that below they also noted that Mr. Fernandez had a couple of CDs in his possession, which he then returned to them. But those CDs were, in fact, prepared by and approved by Navistar to be given to him. You're talking about CDs of his e-mails? That's correct. It's almost as if if he didn't have anything, here's a little way to set you up so you now have something and now you're in breach. He signed a document that he acknowledged or said, I have no confidential or material belonging to Navistar at my residence or any other place. And when a company prepares, whether it's a document, a CD, a binder with materials, and they're in your possession and control, you're in possession and control of those documents or those materials to advance the interest of your employer, not your own personal interest. Is that correct? That's correct. In fact, of the two non-suited counts in this case, Navistar is suing Mr. Fernandez on the two non-suited counts in the circuit court of DuPage County today for breach of fiduciary duty, etc., etc. We don't believe that answers the question as to what goes to arbitration, nor does it answer the question about confidentiality. Mr. Eccles said that these were confidential documents that he had in his possession. Well, the real question is, is it just anything belonging to Navistar? Because Mr. Bungie said, you know, you can keep your BlackBerry with everything that's on it. You can do this, you can do that. Or is it only confidential and proprietary documents that you have to return? Judge Popejoy, as Your Honors I'm sure have noted in the briefs, in our briefs anyway, several times, did not rule on the question of confidentiality. He said, look, you want to have that decision, come back here for a hearing because that would be necessary to issue a permanent injunction. I'm not determining that. I'm just determining that there may have been some documents belonging to Navistar. That's sufficient to issue a TRO. That's all I'm deciding. Come back. Navistar never came back. And that's the fact of this particular record. The question is, you said something, and I want to clarify, please, if you could. You said whether or not things were proprietary or confidential, but you didn't say as well as belonging to. Now, are there things that could be proprietary and confidential that didn't belong to Navistar? Or is that a factual impossibility? It's probably an impossibility, but I don't think that that's really a question. You know, one of the problems we have in cases with certain things being sealed, I don't really, I wasn't in the trial court. I don't really know everything that's in there. We do have some representations, which I found interesting. Before Judge Popejoy, counsel for Navistar indicated that these documents were vital and crucial to Navistar and needed a TRO. And then finally he said, well, have you seen the documents? And she says, oh, no, I haven't seen them. So she doesn't know what's in them. Judge Popejoy doesn't know what's in them. He said, send them to me. I can review them. But then we never have that hearing on what's in them. Judge Popejoy never, he's never asked to hold a hearing, and I wouldn't either if no one's asking me to do it. You did raise a question, though, Justice McLaren, about the affirmative defenses. When the motion, the motion for leave to file an amended answer contained the amended answer with the affirmative defenses in it, and that's the document that triggered Navistar answering the affirmative defenses. So that's how that came in, and that's at T23A716T28. Am I correct in thinking that you, see I don't have a BlackBerry, but it's my understanding that a BlackBerry can access your e-mails or your business e-mails. In fact, that's the reason why he had the BlackBerry was because it was a business phone. It's my understanding as well that it's basically can access e-mails and can. So he was allowed to keep the BlackBerry that had the access to his e-mails. I think they stored their e-mails on the timescale so that he would no longer have access to the older e-mails. I think that's what the CDs were more of. But he was allowed to keep the BlackBerry. Or Navistar had the ability to wipe them out whenever Navistar wanted to? Correct. I mean, they're on their computer system. When I say wipe them out, I didn't mean annihilate them, I meant erase them. Our position is that it's exactly the opposite of Navistar's, and that is that the court should find that the waiver and release goes to arbitration, and everything should be before the arbitrators. Then we don't have to get into all the fine print about the defenses and so forth. What about Mr. Radcliffe's argument that Paragraph 7 is not the trial court error, that in terms of confidentiality, proprietary information, that that was not subject to arbitration, and that Navistar had a right to sue for breach of contract according to the language in the ESA? Well, I think that if you read 9 and 7 together and read the entire thing along with the additional language, that it's clear that all they're doing here is, let's see, did we do that? He has a right to go and get a chunk of relief for any secret confidential information that they're worried about. And that's what he did. What about the language, in addition to any other remedies and damages available under law, comma, equity? Well, that's because you've already thrown everything into arbitration. And arbitration can, as the Illinois Supreme Court has told us and the U.S. Supreme Court, can do all of these things, include a process suspended, terminate, or anything else. They have the power to do whatever a circuit judge can do other than injunctive relief. You can't get injunctive relief in arbitration because you need the power to enforce it. So that's why both Judge Popejoy and also the arbitrators found this to be limited to injunctive relief. And the other question then is, why didn't Navistar just do what you suggested, Your Honor, which is just sue for injunctive relief and clean this up if that's what they were really concerned about? I don't think that was what they were really concerned about. Unless there's any real questions about anything else, I would just like to ask a question or two. Thank you, Judge. What about Navistar's claim that they're entitled to be reimbursed for the attorney's fees that they compensated your client for during the arbitration proceeding? Well, the arbitration proceeding, the attorney's fees awarded at arbitration, which are arbitrator's fees, not attorney's fees, those fees come out of the fact that it's an employee promulgated plan under AAA rules, and when it's an employee promulgated plan, the employer pays. They're stuck with what they chose. They chose AAA in their agreement. As far as individual attorney's fees, the only thing I know about that is that there's been no ruling by the arbitrators on, I believe the record shows at least $20,000 was deposited in the Mattoff attorney's trust account. And I think that that's a question for the arbitrators to decide. I think that the arbitration in this case should include the waiver and release. The documents, even Navistar, and there are many complaints, indicated that the two documents have to be read together. The rights of one trigger rights of the other and vice versa. The more important, I think, is the fact that the affirmative defense of duress is particularly applicable here, and finding that that affirmative defense was somehow waived is disturbing to me because of the nature of what happened here. Mr. Fernandez walked into a meeting on the 13th of February ostensibly to discuss his bonus for the preceding year and instead is told, you're out of here, you're through today, no prior warning whatsoever. And by the way, we never received a signed copy of your December ESA, so that's gone. You're out of here without a dime. And he's told, well, but we'll give you the December ESA if you sign this other little agreement we've got here for you called a waiver and release. And we've got our attorney here from Kirkland & Ellis, but you can't have anybody review these documents, sign them or else. And that was a situation I think that clearly manifests a situation of duress. If they just said, look, take two days and have your attorney look at it and then come back. But to the extent that there's some ideas. Do you have a case that says that that situation is duress? Your client's highly educated. He's making a six-figure salary. Do you have a case saying that because he's not represented that that is duress? Well, I've done a lot of employment cases. Do you have a case that says that's duress, that amounts to duress? Not off the top of my head. I could have cited one in the brief, though. But I'll reserve that. And I don't know. We've got 10-10. Thank you. That's it. And so we would just ask that the court reverse and remand and send the entire matador. Thank you. Your Honor, just a couple of points. First of all, counsel is wrong. We have paid $30,000 in attorney's fees in the arbitration already. And we have invoices for Mr. Fernandez of $600,000. I saw that figure. What does that break down to or into? I really don't know. All I know is their attorneys are claiming that they've spent all of that time in arbitration relative to the fees. You said $600,000. That doesn't go towards anything other than attorney's fees? Yes. That's what they tell us. That's why we're not paying it. Okay? But that's what they claim. Again, freely. You're also paying the arbitrator's fees, aren't you? Yes, we are. And you're asking for recoupment for that, too, aren't you? Yes. What's that? It's somewhere north of a half a million dollars. They bill $900 an hour for two of them and $600 an hour for the other one. So they make more than we do. We're all in the wrong business. Yes. Fernandez had an ESA in February. The problem from Fernandez's standpoint is he didn't get his money for six months. He wanted it right away, within ten days. If he hadn't breached the waiver and release, he would have gotten $337,000 in benefits on top of his six-figure salary that he got. And he worked there seven months. No tag days for Mr. Fernandez, as Judge Burkett said. That educated man was going to walk out of that room under duress, so to speak, getting $337,000. A couple of points. I know I only have a couple of minutes. I believe Judge Polkjoy was wrong in sending the ESA over to arbitration. Let's assume that you decide he's right. It should have gone. The backup argument of Fernandez's is that you crammed the waiver and release into the ESA, send that over to arbitration as well. So you have an initial agreement in ESA with a specific CARA clause. Then you have a second agreement, a waiver and release, that has no arbitration clause whatsoever. These are parties that obviously are aware of what an arbitration clause is, and they chose not to put it in the waiver and release. And what Fernandez is saying is because the waiver and release has an impact on the ESA, you've got to send that over to arbitration as well. I would suggest that there is, under the facts and circumstances of this case, there is nothing whatsoever that indicates that these parties intended to have issues as to the breach of the waiver and release decided in arbitration. That's all I have. If you have any other questions, happy to answer them. Okay. Thank you, gentlemen. Thank you. Have a good night. The case will be taken under advisement.